## **AFFIDAVIT**

I, Scott W. Kelley, being duly sworn, depose and state the following:

1. I am a Postal Inspector with the United States Postal Inspection Service (USPIS), having been appointed to this position in June 2007. I am currently assigned to the Boston Division and I am responsible for the investigation of various crimes relating to the United States Mail. Prior to my appointment as a Postal Inspector, I was a Special Agent with the Naval Criminal Investigative Service (NCIS) for approximately one year and I was responsible for investigations in the interest of the United States Navy and Marine Corp. Prior to my NCIS employment, I was a Postal Inspector with USPIS between approximately September 2003 and June 2006. I have attended training at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA and have completed Basic Inspector Training (BIT) in Potomac, MD. I have received training in the investigation of crimes involving the sexual exploitation of children by attending numerous seminars and courses. I have investigated child pornography cases and related sexual offenses for approximately 5 years.

2. The information set forth in this affidavit is based on an investigation conducted by this affiant and other law enforcement agents.

3. This affidavit is submitted in support of a criminal complaint charging DOUGLAS W. BOONE, of 200 Homer Ave. N, Lehigh Acres, Florida, with Sexual Exploitation of Children, in violation of 18 U.S.C. 2251(a).

4. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. Rather, it contains those facts that I believe to be necessary to establish probable cause for the crime charged in the complaint. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

5. The instant investigation, described more fully below, has revealed that on or about May 2010 through on or about August 2010, DOUGLAS W. BOONE employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, in violation of Title 18, United States Code, Section 2251(a).

## STATUTORY AUTHORITY

6. This investigation concerns alleged violations of Title 18, United States Code, Sections 2251, relating to the sexual exploitation of minors.

2

a. 18 U.S.C. § 2251(a) makes it illegal for any person to employ, use, persuade, induce, entice, or coerce, any minor to engage in, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

### DEFINITIONS

7. Title 18, United States Code, Section 2256 provides the definitions for Section 2251. A "minor" is any person under the age of 18 years old. "Sexually explicit conduct" includes actual or simulated sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal whether between persons of the same or opposite sex), bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person. "Producing" means producing, directing, manufacturing, issuing, publishing, or advertising. A "visual depiction" includes undeveloped film and videotape, and data stored on computer disk or by electronic means that is capable of conversion into a visual image.

3

8. For purposes of this affidavit, any individual below the age of 18 will be referred to as a "child" or a "minor," and any visual depiction of a real child or minor engaging in "sexually explicit conduct," as that term is defined in Title 18, United States Code, Section 2256, will be referred to as "child pornography."

### INVESTIGATION

9. In September 2010, USPIS was contacted by a Police Department in the State of Massachusetts for assistance with an investigation regarding the possible sexual exploitation of a child.

10. In August 2010, a 13-year-old female child (hereinafter referred to as "Jane Doe" or "JD"), and her mother met with police personnel. JD's mother informed the officer that her daughter had had an extensive online relationship with an adult male.

11. JD indicated that during the summer of 2009, she met an individual named "Doug" online, and began communicating with him in a community chat room through Blogtv.com.[1] JD was 12-years-old at the time, but told "Doug" she was 17-years-old. At that time, nothing of a sexual nature occurred. JD also chatted with "Doug" through the Internet software program called

---

[1] Taken directly from the website, blogTV.com is described as "a leader in online video and live broadcasting, where viewers from all over the world can come share their personal talents and opinions LIVE!"

4

"Skype."[2] JD and "Doug" chatted casually for about 1 to 1½ months and then communications ceased.

12. In May 2010, "Doug" again contacted JD via Skype. After this initial contact, they began communicating again through chat rooms. She and "Doug" would communicate almost daily through the Internet, and by email, cell phone, and text message. JD said that "Doug's" communications with her became sexual in nature and "Doug" kept trying to convince her to get nude in front of her webcam and let him watch. "Doug" was persistent and eventually JD succumbed to his request. JD was connected directly to "Doug" online, and in the first instance, she only took off her shirt but left her bra on. Subsequently, "Doug" talked JD into taking off her pants, but leaving her underwear on. Eventually, JD was persuaded by "Doug" into taking off all of her clothes in front of the webcam. Each time JD appeared nude in front of the webcam, it was linked directly to "Doug" through Skype.

13. Sometime in May 2010, JD told "Doug" she was only 13 years old. He told her he was 17.

14. JD appeared nude on webcam for "Doug" at least 20 times between May and August 2010. JD recalled that "Doug" had a program to record these live video feeds and that he recorded

---

[2] Taken directly from Skype's website (www.skype.com), Skype is described as "software that enables the world's conversations. Millions of individuals use Skype to make free video and voice calls, send instant messages and share files with other Skype users."

most of the videos onto his computer. "Doug" told her that after he recorded the videos of her, he would send them to his friends to watch. "Doug" told JD that he had a group of friends that he would share his videos with, and that they would share their videos with him. JD said he also posted some of videos on a few different websites. "Doug" told her later that he had "removed the threads" and removed the videos from the websites.

15. JD said that "Doug" would masturbate on camera every time she was on camera and they would watch each other. JD recalled that "Doug" would either be sitting or lying on his bed. JD did remember that "Doug" did make a recording of her and sent it to her in an email, but she never opened it.

16. JD explained that as time went on, "Doug" would become more and more demanding if she did not get on video and he could not see her.

17. During the summer months of 2010, "Doug" purchased two phallic sex toys and sent them to JD by mail. These sex toys were purchased through an online website and shipped directly to JD's home address. The items were accompanied by a receipt from "MyPleasure", A Sawhorse Enterprise Company, 1601 Sneath Lane, San Bruno, CA 94066. The receipt reflected that the items were billed to "Douglas Boone, 200 Homer Ave N., Lehigh Acres, FL 33971" and shipped to JD's home address. As one of the sex toys was battery-operated, rechargeable batteries and a charger were

also sent to JD. The receipt for those items reflected the same billing address as the sex toys.

18. JD said that "Doug" bought these sex toys for her with the intent that she use them on camera for him. JD admitted to using these sex toys on camera for "Doug."

19. During her relationship with "Doug," in addition to BlogTV and Skype, JD and "Doug" used several other websites to communicate: TinyChat, Facebook, Z-Share, Craigslist, and Camfuze.

20. JD described CamFuze as an adult pornography website where you send live video of yourself for others to view, make comments, and vote for the best live video of the day. "Doug" kept asking her to use CamFuze to send a nude video of herself for him and his friends to watch. "Doug" finally convinced her to do a live video of herself in the nude. She masturbated with the two sex toys and admitted to appearing on CamFuze two or three times in August 2010.

21. JD indicated that it was "Doug's" wish for her to advertise herself on Craigslist.com. "Doug" asked her to put an advertisement and post pictures of herself on Craigslist in hopes that other men would respond to the ad. "Doug" said that he wanted to watch these men have sex with her via webcam. He persuaded JD to put an advertisement on craigslist.com. She said she did what "Doug" wanted and created an ad which was not

specific. She said the ad listed something about trading pictures. JD said it was not her intent to have sex with anyone and that she would never have anyone come to the house she did not know.

22. JD learned that "Doug" was much older than he initially said he was and she was shocked. She said that "Doug" had been sending pictures of his teenage nephew, telling her they were pictures of him. JD said that only recently did she see "Doug's" face on the webcam.

23. Several months ago, "Doug" told JD he was really 38-years-old, and married to a 26-year-old woman. "Doug" told JD that at one point when she was streaming a nude video to him, his wife walked in. He stated that his wife left him as a result.[3]

24. JD said she was given "Doug's" credit card information after she began doing nude videos for him. JD said "Doug" gave her the credit card information and let her buy things in exchange for her nude videos. JD recalled she made two purchases with "Doug's" credit card. She attempted to make a third purchase, however she thinks the transaction was cancelled prior to the payment being finalized.

---

[3] Kimberly Boone, of 200 Homer Avenue N., Lehigh Acres, FL, submitted a change of address request to the United States Postal Service on approximately June 25, 2010.

25. JD provided the following credit card information that she received from "Doug":

>Douglas Boone
>Visa
>Credit card # XXXX XXXX XXXX 9017
>Security code XXX
>Expiration date 7/13
>Address 200 Homer Ave N., Lehigh Acres, FL 33971.[4]

26. JD stated that she overheard "Doug" talking on the phone with his doctor's office and believed she heard "Doug" recite his date of birth as XX/XX/61.[5]

27. JD provided "Doug's" cell phone number as 239-677-7480.[6]

28. JD said she and "Doug" had been arguing in recent weeks. "Doug" told her that he was going to ruin her life and that he would call her mother and tell her everything that she had done. JD said she then broke down and told her mother what was going on.

29. JD recalled that "Doug" had a roommate named "Neil." "Neil" had a tattoo of Chinese letters on his left forearm with red ink on the top. He also had his eye, tongue, and nipples

---

4 The first twelve digits of the credit card number and the security code have been redacted.

5 A law enforcement database search reveals a birth date of XX/XX/61 for Douglas Boone of 200 Homer Avenue N., Lehigh Acres, Florida 33971.

6 JD also provided email address for "Doug" of "baboone03@comcast.net" and screen names of "douggie_style5" on "blogTV.com" and "douggie_style" or "douggie_styles" on Skype.

9

pierced. "Doug" and "Neil" watched her in the nude one day while she sent video of herself to "Doug" online via webcam.

30. On September 7, 2010, personnel of the Lee County Sheriff's Office researched the Lee County property data for 200 Homer Ave N, Lehigh Acres, FL, 33971. The owners of record were Douglas W. and Kimberly M. Boone.

31. On September 13, 2010, Detective Fabio R. Nahmens of Lee County Sheriff's Office applied in the County Court for Lee County, Florida for a search warrant to search the residence at 200 Homer Avenue N., Lehigh Acres, Florida 33971. The search warrant was authorized by Circuit Judge G. Keith Cary.

32. Surveillance was conducted at 200 Homer Avenue N., Lehigh Acres, Florida by law enforcement personnel of the Lee County Sheriff's Office. A white motor vehicle bearing Florida Registration D94UB was observed in the driveway on more than one occasion. A registration inquiry revealed this vehicle was registered to Neil Simoga. Law enforcement proceeded to obtain his Florida drivers license photograph. This review of the license photo revealed that Simoga had a pierced eye brow. This was noted in the description provided by JD in her statement to law enforcement.

33. On September 15, 2010, a check was conducted with the local United States Post Office in Florida and it was confirmed

that Douglas Boone was receiving mail at 200 Homer Ave. N., Lehigh Acres, FL 33971.

34. The search warrant authorized September 13, 2010 was executed on September 21, 2010.

35. On September 21, 2010, law enforcement conducted an interview with Boone at his residence. Boone admitted to having an online relationship with JD. Boone explained he was under the impression JD was about 18 or 19 years of age.[7] Boone admitted to images of JD in the nude in various positions had been transmitted to him by text messaging and email. Boone admitted to participating in mutual masturbation sessions with JD by webcam using Skype. Boone detailed these masturbation sessions as JD exposing her genitals to her webcam while streaming live video to him. These mutual masturbation sessions also included Boone exposing his genitals to his webcam while streaming live to JD.

36. Boone admitted to using a computer program to video record JD's webcam sessions. Boone said he would give JD instructions on what to do to herself sexually while using the webcam.

---

[7] "[P]roducers may be convicted under § 2251(a) without proof they had knowledge of age." United States v. Malloy, 568 F.3d 166, 173 (4th Cir. 2009) (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 77 n. 5 (1994)). A defendant's awareness of the victim's minority is not an element of the offense. Id.

11

37. Boone admitted to purchasing a sex toy for JD to use during one of the webcam sessions. Boone admitted to recording her during a masturbation session using the sex toy. Boone admitted to having numerous recorded video files on his computer to include those depicting JD, as well as other videos that contain images of children being sexually exploited.

38. Boone said he did have indications that JD was younger due to the fact that he overheard her mother yelling at her on the webcam. On more than one occasion, Boone admitted, he was in contact with JD right after her mom left the house for work in the morning. When asked if he asked JD's age, Boone replied "No", because "I didn't want to know."

39. Boone admitted to sending a link to friends containing the video file of his recorded file of JD performing sexual acts for him. Boone recalled that this file was viewed by approximately 5000 viewers.

40. Boone also admitted to using an online website to upload and share files. He consented to allow USPIS to search this online account for images or videos related to the sexual exploitation of children, and provided his username and password. Specifically, he allowed law enforcement to search for videos of JD.

41. On approximately October 7, 2010, your affiant logged onto the online account to which Boone had consented and

accessed its content. Your affiant observed at least seven uploaded videos of JD. Two are described below:

>   a.  The file was uploaded to the website on May 21, 2010. The video depicts a female minor exposing and touching her own genitals at the direction of a male voice. Based on observations of the video and previous interaction with Boone during the interview, your affiant believes the minor depicted to be JD, and the voice to be that of Boone. During the video, Boone instructed the minor to "put the camera on your 13-year-old pussy."
>
>   b.  The file was uploaded to the website on August 1, 2010. The video depicts a female minor exposing and touching her own genitals while a male voice comments. It also depicts the insertion of what appears to be a phallic sex toy into the vagina of the female minor. Based on observations of the video and previous interaction with Boone during the interview, your affiant believes the minor depicted to be JD, and the voice to be that of Boone. During the video, Boone states, "I am going to hell for buying her the toys," and "take your Daddy's cock little girl."

A partial copy of the video described at (a),[8] and a full copy of the video described at (b), will be provided for the Court's review with this affidavit.

---

[8] The download of the video described at (a) terminated before the entire video was downloaded by law enforcement. Approximately 3 minutes and 43 seconds of the entire video was captured.

13

CONCLUSION

42. Based on the foregoing facts, there is probable cause to believe that on or about May 2010 through on or about August 2010, DOUGLAS BOONE employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, in violation of Title 18, United States Code, Section 2251(a).

_____
Scott W. Kelley
Postal Inspector
US Postal Inspection Service

Subscribed and sworn to before me this 14th day of October, 2010.

_____
Jennifer C. Boal
United States Magistrate Judge

   I have reviewed the files referenced in paragraph 41 above, and I find probable cause to believe they depict minors engaging in sexually explicit conduct.  The United States Attorney's Office shall preserve the images provided to the Court, for the duration of the pendency of this matter, including any relevant appeal process.

_____
Jennifer C. Boal
United States Magistrate Judge